[No. 8214.  Department Two.  January 10, 1910.]

THE STATE OF WASHINGTON, *Appellant*, v. C. L. HOFFMAN
et al., *Respondents*.[1]

GAMING—INFORMATION—DEFINITENESS.  The felony of conduct-
ing or opening certain games of chance at a place "where persons
resort for the purpose of gambling," under Laws 1903, p. 63, is
not a "continuing" offense, and an information charging the crime
as committed on different days between specified dates is not
specific and certain as to the offense charged, and is demurrable in
that it charges more than one offense (Dunbar, J., dissenting).

Appeal from a judgment of the superior court for Pacific
county, Rice, J., entered June 18, 1909, dismissing a prose-
cution for conducting gambling at a gambling resort, upon
sustaining a demurrer to the information.  Affirmed.

*John I. O'Phelan,* for appellant.

*Chas. E. Miller,* for respondents.

PARKER, J.—The respondents were charged by informa-
tion filed in the superior court by the prosecuting attorney.
as follows:

"That said C. L. Hoffman and Fred Carter, on the 5th
day of April, A. D. 1909, in South Bend, Pacific county,
Washington, then and there being, did then and there on
said 5th day of April, A. D. 1909, and on divers and differ-
ent other dates, days and times, between the first day of
January, A. D. 1909, and the first day of May, A. D. 1909;
then and there being, did then and there wilfully, unlawfully
and feloniously conduct, carry on, open and cause to be
opened, games of poker, draw poker, rounce and other bank-
ing games of chance played with cards for chips, money,
checks, credits and other representatives and things of value
in that certain one-story frame building in South Bend, Pa-
cific county, Washington, known as 'Hoffman's,' the said one-
story frame building known as 'Hoffman's' then and there
being a place where divers persons then and there resorted for

[1]Reported in 106 Pac. 139.

the purpose of playing, dealing and operating said games of poker, draw poker, rounce and other banking games of chance with cards, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Washington."

The crime which it is sought to require respondents to answer for by this information is defined by chapter 51, pp. 63, 64, Laws of 1903, as follows:

"Any person who shall conduct, carry on, open, or cause to be opened, either as owner, proprietor, employee, or assistant, or in any manner whatever, whether for hire or not, any game of faro, monte, roulette, rouge et noir, lansquenette, rondo, vingt-un (or twenty-one), poker, draw-poker, brag, bluff, thaw, tan or any banking or other game played with cards, dice or any other device, or any slot machine, or other gambling device, whether the same be played or operated for money, checks, credits, or any other representative or thing of value, in any house, room, shop, or other building whatsoever, boat, booth, garden or other place, where persons resort for the purpose of playing, dealing or operating any such game, machine or device, shall be guilty of a felony, and upon conviction thereof shall be imprisoned in the penitentiary for the period of not less than one nor more than three years."

A demurrer to the information by respondents, upon the ground that more than one crime is charged therein, was sustained by the superior court, and the prosecuting attorney electing to stand thereon and declining to file a new information, the respondents were by the court ordered discharged, from which the state by the prosecuting attorney has appealed to this court.

It is elementary under our system of criminal procedure that an information must be direct and certain as to the crime charged, and that it must charge but one crime. Bal. Code, §§ 6842, 6844; *State v. Bliss*, 27 Wash. 463, 68 Pac. 87. It will be noticed that this information charges the respondents with doing the acts declared to be a crime by this law on the "5th day of April, 1909, and on divers and different other

dates, days, and times, between the 1st day of January, 1909, and the first day of May, 1909." The theory upon which the prosecuting attorney seeks to justify the charging of the offense upon these different times is that the offense is a continuing one, and consists of conducting a gambling resort. It is argued that since the place where the prohibited games are conducted, carried on, or opened, must be proven to be a place, "where persons resort for the purpose of playing, dealing, or operating any such game, machine, or device," therefore it is not only permissible but necessary to charge the crime as being committed on different days and times so as to show it is such a resort.

We are not able to agree with this view of the law. It is apparent, of course, that the law is aimed at the suppression of gambling resorts, as is indicated by its title, and also, as has heretofore been noticed by this court, in *State v. Preston,* 49 Wash. 298, 95 Pac. 82, and *State v. Gaasch, ante* p. 381, 105 Pac. 817. But the acts constituting the crime which it seeks to punish to the end that such resorts may be suppressed must be looked for in the body of the law defining the crime, where we find that it consists of the specific act of *conducting, carrying on, opening, or causing to be opened,* any of the games named in the places specified, which places for brevity's sake we may term gambling resorts, though such places are described rather than so named in the law. Of course it is necessary to charge that the prohibited acts are done at such a place, but it does not follow that the character of the place depends upon the number of different times the respondents may have committed the prohibited acts there. If respondents committed any such acts at one time at such a place, they would be guilty of the offense defined though they may never have been at the place at any other time. We are not dealing with the question of how the nature of the resort may be proven. It is at least certain that it is immaterial how often the accused committed any of the acts there so far as their guilt is concerned. It

seems to us that the acts charged against the respondents as being committed upon these several different days and times charges the commission of as many different and separate offenses under this law.

Learned counsel for the state has, with marked industry, collected and cited a great array of authorities in support of his contention, based upon the assumption, however, that the statute defines and that he has charged a continuing offense. If such were the offense defined and charged, instead of the doing of certain acts in a gambling resort, the authorities cited would justify charging the keeping of the resort covering a period of several days or more, and treating it as one offense.

The offense which is, by this information, charged against respondents being a felony, punishable by imprisonment in the penitentiary, they are entitled to the protection of the same rules of criminal pleading requiring certainty and singleness of the offense charged as if they were being called upon to answer any other felonious charge. We are of the opinion that this information does not inform them of the crime which they are called upon to answer with that degree of certainty and singleness which the law requires. The order of the learned superior court sustaining the demurrer to the information is affirmed.

RUDKIN, C. J., MOUNT, and CROW, JJ., concur.

DUNBAR, J. (dissenting)—I dissent. While it is true that, by express mandate of the statute, an information must be direct and certain as to the crime charged and that it must charge but one crime, this information, in my judgment, is in no way obnoxious to this requirement. It is as direct and certain as to the crime charged as the statute itself is, for it is in the language of the statute. It charges but one crime, and that is the crime of conducting a gambling resort. If it charged the defendants with gambling and also with keeping a gambling resort, there would be some merit in the conten-

tion that it was duplicitous and did not notify the defendants of what crime they were charged with, to the end that they might intelligently prepare their defense. This is all they are entitled to, as is shown by construing the statute quoted in connection with § 6850 [Ballinger's Code] to the effect that the indictment or information is sufficient if it can be understood therefrom (so far as this question is concerned) that the act or omission charged as a crime is clearly and distinctly set forth, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. If the same force and effect were given to this provision of the statute which reaches to the merits of the case, as is given to the more technical requirements of § 6844, or if that section were construed in connection with the salutary provisions of § 6850, the defendants would be protected in all their rights, while at the same time the intention of the law would prevail and malefactors would not so often go unwhipped of justice.

The respondents cite several cases to sustain the doctrine that a defendant cannot be charged in one and the same count with two or more independent offenses, and this is no doubt the established rule, especially where the penalties for the different crimes are different. But this rule has no application to the case at bar, in so far, at least, as the contention is concerned, which I understand is the basis of the decision, viz., that this information charges the defendants with committing the crime of maintaining a gambling resort at different times; for the crime charged is exactly the same on one date as another, and the penalty is the same. When a statute enumerates several acts in the alternative, the doing of which is subjected to the same punishment, all of such acts may be charged cumulatively as one offense. 10 Ency. Plead. & Prac., p. 536. This announcement is well sustained by authority. In *United States v. Scott*, 74 Fed. 213, the indictment charged a series of acts, all of the same character and punishable by the same penalty, and the indictment was sus-

tained by Judge Taft, who cited, approvingly, *Reg. v. Bleasdale*, 2 Car. & K. 765, where it was held that, where a man for several years had been stealing coal by an entry run by him into the seams of coal belonging to forty other coal mine owners, he might be indicted on one count for all the thefts in his continuous series of coal mining.

It cannot be that the defendants are entitled to anything more than justice, or in other words a fair trial. That is the ultimate object of all laws governing criminal procedure, and ought to be borne in mind in the construction of criminal laws. The defendants could not be wronged in any way by going to trial on the information filed, and if the state saw fit to embrace different dates, the only result would be that the action tried would bar the prosecution for the same crime between the dates alleged, which the respondents could not complain of.

In any event, the demurrer should only have been sustained to that portion of the information which charged the commission of the crime at divers and different other dates, etc. If the commission of the crime at those times could not be proven, it was not because a definite crime had not been charged, but because that portion of the information objected to was surplusage, and there was still left the definite and distinct charge that the crime was committed on the 5th day of April, A. D. 1909, and respondents should have been compelled to answer to it. This may not be the general practice in the trial of criminal actions, but obviously it ought to be.