## Commonwealth v. Edner

*Rudolf M. Wertime*, district attorney, for Commonwealth.

*LeRoy S. Maxwell* and *Edwin D. Strite*, for defendant.

WINGERD, P. J., March 27, 1951.—Defendant was indicted under The Penal Code of June 24, 1939, P. L. 872, Sec. 605, 18 PS §4605, which provides among other things: "Whoever sets up or establishes, or causes to be set up or established, any game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon; . . . is guilty of a misdemeanor, . . ."

There were nine separate indictments, each one setting forth that, on March 4, 1950, in Washington Township, Franklin County, Pa., he had set up, etc., a certain slot machine, describing the machine and giving the serial number thereof. When the cases were called for trial, defendant contended that, as the indictments set forth that all of the machines were gambling devices and as they were all set up on the same day at the same place, the indictments alleged only one offense and that, therefore, the district attorney was bound to elect on which indictment he would try defendant. The court refused to direct the district attorney to so elect. Defendant pleaded not guilty to each one of the indict-

ments upon the understanding that such act would not prejudice him in making the contention that all of the indictments constituted one offense. The court allowed this, reserving to defendant the right to raise his contention after the jury had reached its verdicts. All of the cases were tried together before one jury. The jury found defendant guilty on each one of the nine indictments. Defendant made a motion in arrest of judgment and for a new trial, giving as one of the reasons therefor, the following:

"The court erred in not ruling that there was but one offense instead of nine separate offenses and that the district attorney should have proceeded on one indictment instead of nine indictments or should have proceeded with the nine indictments consolidated into one offense".

There is no doubt that defendant, pursuant to the objections made by him before the jury was sworn and before pleading to the indictments and the court's ruling on such objections, had the right to raise this question in his motion for arrest of judgment and for a new trial. This reason for a new trial is the only reason urged by defendant in support of his motions and the only matter argued before the court in support thereof.

The evidence in the case showed that the machines in question had been set up in a building owned by the Eagles' Aerie Home near the western limits of Waynesboro, in Washington Township, Franklin County, Pa., that on March 4, 1950, there had been a raid and that the machines described in the several indictments were there on that day. Just when each machine had been set up was not shown but it was shown that all of them were set up and established during a period between sometime in August 1948 and March 4, 1950. By the finding of the jury defendant set up or caused to be set up each one of these machines, each of which was a

gambling device, although each was not exactly the same in character. There were machines which were played with coins of different value.

Let us consider what section 605 of The Penal Code means. Defendant contends that the word "any" as used in the expression "any game or device of address" has the force of "every" and "all"; that "any", when used in a statute, has been held to mean "some" or "indefinite number or quantity" and that the proper construction in the instant case is that "any" must be read "as definitive of an indefinite number" and if so, there has been but one offense committed by defendant under the finding of the jury.

We cannot agree with the contention of defendant. Section 605 of The Penal Code of June 24, 1939, supra, to us, clearly makes each setting up or establishing or causing to set up or establish "any game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon;" a distinct and separate offense. The word "any" as used in connection with the singular of "game or device" has the ordinary meaning ascribed to the word, i.e. "any one of many". It means any one device of any character used for gambling or a game or device of address or hazard no matter of what kind or character. To give it any other meaning is not in accordance with its common and ordinary use in connection with a singular noun, i.e. "One indifferently out of a number; one (or as pl., some) indiscriminately of whatever kind or quantity": Webster's New International Dictionary. If used with a plural noun it may be synonymous with "some" just as "some" when used with a singular noun may be synonymous with "any". In support of the meaning of "some" or "indefinite number or quantity", defendant cites Whitherhead v. Allen et al., 42 N. Y. [3 Keyes'] 562, which was a case providing for suits against "any and all stockholders".

This is no authority for defendant's position, for "any" is used in connection with the plural and it could readily be interpreted "any one or more". Defendant also cites New York County Medical Association v. City of New York, 65 N. Y. S. 531, in which the court considered a statute directing that fees collected from prosecutions for practicing medicine without proper registration shall be paid to any medical society which makes the complaint. Defendant contended that the statute only referred to three societies which had been named in prior acts. The court held that "association" and "society" were convertible terms and if the legislature meant to confine the statute to three it could have done so instead of using the word "any" which means "an indefinite number or quantity" and held the association entitled to the fine. This opinion, on the facts, gives the word "any" the meaning, "any one of an indefinite number". To this court there is no question that section 605 of The Penal Code makes the setting up of a single gambling device of any nature a crime and that it does not include the setting up of many devices as one offense. The offense set forth in that section is not the establishing of a gambling place or the conducting of a place where gambling takes place, as such, but is the setting up of a single device.

Defendant further argues:

"The general rule laid down in Corpus Juris Secundum (42 C. J. S. 1124, §168) is that where the same act is charged with having been committed by defendant at the same place and at the same time even though there be several agencies or instrumentalities used to commit the act there is only one offense. One of the leading cases supporting this rule is State v. Jackson [242 Mo. 410], 146 S. W. 1167 (1912), where the indictment charged that defendant 'did unlawfully and feloniously set up and keep divers gaming tables and gambling devices, to-wit: one crap table, commonly

so-called, and one poker table, commonly so called, upon which dice and cards were used, which said gaming tables and gambling devices were adapted, devised and designed for the purpose of playing games of chance for money, property and poker chips'. Defendant moved to quash the indictment for the reason, inter alia, that it charged two separate and distinct offenses. The appellate court in holding that the motion to quash was properly overruled said: 'If the same person violates the statute by keeping more than one table at the same time and place and as one transaction, there is no more reason for dividing such act into so many separate and distinct felonies as there were tables than there would be for making the number of felonies equal the number of animals stolen under the statute making it grand larceny to steal "any horse, mare, colt, etc.". It is a felony to steal one horse, but the theft does not amount to two felonies because instead of one, two are stolen. If the accused, as part of the same transaction and with the same felonious purpose sets up and keeps two gambling tables, whether the same or different in kind, no valid reason can be given why he may not be prosecuted for such act as if he had set up and kept but one. Upon the trial of the case, if it should be developed by the evidence that the tables were not set up or kept as one transaction, at the same time and place, then the State should be required to elect upon which table it would ask a conviction.' "

In the opinion from which the foregoing quotation is taken (State v. Jackson, 242 Mo. 410, 146 S. W. 1167 (1912)) the court, on page 418, also states:

"The statute upon which the prosecution was based forbids the setting up or keeping of any gambling table or gambling device, etc", and although the court sustains the lower court in overruling the motion to quash the indictment, it finds that, as the lower court directed the jury that they should return a verdict of guilty, if

they found that defendant set up and kept both or either of the gaming devices charged, the lower court erred, saying, "Under this instruction and the verdict returned the jury may have convicted the defendant of keeping either of the two tables charged, or some of the jurors may have agreed to a verdict of guilty as to one table, while the other members reached the same result as to the other table. The setting up and keeping of either table was an offense, and it cannot be determined from this record which of the tables charged the defendant was found guility of setting up and keeping."

This opinion, although holding the indictment alleges only one offense, still concludes that there were two offenses and the jury must render a verdict, if guilty, which indicates defendant guilty of both or either of them. The case definitely holds each setting up of a gambling device is an offense under a statute using the word "any" in connection with gambling device.

It has been held in Pennsylvania that a count in an indictment which joins the larceny of several distinct articles belonging to different persons is good, provided the time and place of the taking of each is the same: Commonwealth v. Holstein, 76 Pa. Superior Ct. 74, 76; Fulmer v. Commonwealth, 97 Pa. 503, 506-07.

In Commonwealth v. Hall, 23 Pa. Superior Ct. 104, it has also been held that an indictment setting forth in one count that defendant "unlawfully, falsely and fraudulently did make, utter and publish, and cause to be made, uttered and published a certain written instrument, etc." was not bad for duplicity because it charged forgery, uttering, and causing to be made and uttered a particular instrument, each of which is a separate offense. The court said, page 111:

"Now if a person should fraudulently make, sign, alter, utter and publish a forged note at the same time and place, and as one transaction, it seems beyond question that it would be proper pleading to charge the

offense in a single count, and on the trial the question would be for a jury as to whether or not the several acts did constitute a single offense, and if they did it might be a general verdict of guilty in manner and form as indicted. But if under the testimony it should appear that the defendant had fraudulently made or altered the instrument with intent to defraud any person, but that he was not concerned in the uttering or publishing the same, then it would be the duty of the court to control the matter by appropriate instructions to the jury. So also if it should appear on the trial that one person had forged the note and another, the defendant on trial for instance, had uttered it with the knowledge that it was a forgery, then the court could instruct the jury that the defendant could only be convicted, if at all, of the uttering. The view we take of this case is that it comes within the same class as the cases referred to in Commonwealth v. Miller, supra. It should be noticed that the indictment under consideration charges in a single count that John M. Hall on November 13, 1901, with force and arms, etc., unlawfully, falsely and fraudulently did make, utter and publish, and cause to be made, uttered and published a certain written instrument, etc. This charges it all as a single transaction by the same person and at the same time and place and under the authorities, supra, we are unable to see how the court could have quashed this indictment. The motion to quash was in effect a demurrer, and the facts averred in the indictment must at the time be taken as true."

In Commonwealth v. Kolb, 13 Pa. Superior Ct. 347, which involved the sale of oleomargarine, the second count charged that defendants "did sell and offer for sale" and the court, on page 353, said:

"The objection on the ground of duplicity is untenable. This objection arises only when unconnected acts, each of which is a distinct offense, are charged in the

same count. But when the several acts charged are merely aspects or stages of one transaction, though each, when alone present, is an offense, it is not duplicity to charge them all. Thus, an assault, though of itself an offense, is but one stage of a battery, and merges in it if the battery be committed; hence, in such case, both may properly be charged in one count. An offer to sell in violation of the act of 1895, though of itself an offense, is but a stage of the contract of sale, and when this contract becomes complete, the offer merges in the sale; hence both may be charged in one count. There may be a conviction of an assault, in the one case, or of an offer to sell in the other, should the evidence be insufficient to prove a battery or a sale."

Commonwealth v. Miller et al., 107 Pa. 276, was a case in which defendants were indicted for forcible entry and detainer in the same count and the indictment was held good and not bad for duplicity. Justice Clark said, on page 279, 280:

"In the case of Com'th v. Rogers, 1 S. & R. 124, the defendants were charged in the same form pursued in the case at bar; the jury found the defendants not guilty of forcible entry, but a portion of them guilty of forcible detainer. Chief Justice Tilghman in that case held that a forcible entry and a forcible detainer were distinct offences, and although both were charged in a single count, he held that the defendants might be convicted of one and acquitted of the other; if one was defectively set out, and the other well, a conviction might be had on that which was well. That the offences are and always have been distinct and divisible cannot be doubted.

" 'But when a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a phase in the same offence, it has, in many cases been ruled that they may be coupled in the one count: Thus,

setting up a gaming table, it has been said, may be an entire offence; keeping a gaming table and inducing others to bet upon it may constitute a distinct offence, for either, unconnected with the other an indictment will lie; yet when both are perpetrated by the same person, at the same time, they may be coupled in one count:' Wh. Cr. Pl., 257. It is not regarded as duplicity thus to join successive statutory phases of the same offence. So a man may be indicted for the battery of two or more persons in the same count, if it was all one transaction, or for the larceny of several distinct articles belonging to different owners, if the time and place of taking are the same: Fullmer vs. Com'th, 1 Out. 506."

These cases hold: First, where, in the case of larceny one person takes the goods of several owners at the same time and place, such larceny may be charged in a single count, no doubt on the theory that there is only one trespass and one asportation effecting the subject matter of the offense which may consist of different articles owned by different people; second, where there is one transaction which comprises in its scope more than one offense, the whole transaction may be charged in a single count, although there may be a conviction on one or on more or on all phases of the transaction as in forgery, uttering or causing to be uttered a written instrument, and third, where an indictment in one count charges a defendant with committing several offenses of like nature and subject to the same penalty at the same time and place, it will not be held bad for duplicity for as the motion to quash is in effect a demurrer and the indictment says same time and place, it must be so considered but if the evidence shows that the offenses were committed at different times or places, he may be convicted on any one of them, or the Commonwealth may have to elect on which one it is proceeding.

It will be noticed that in each of the foregoing cases, although the court holds what may be charged under one count of an indictment, it does not hold that the offenses charged in one count could not have been properly charged in separate counts. We must keep in mind that distinction between what may be charged in òne count in an indictment without making it duplicitous and what constitutes a separate offense.

An act may constitute one offense and yet have two definite results each of which would have been a separate crime if each was caused by a separate act. "Where one wounds two persons in the same affray at the same instant of time, with the same knife, and with the same stroke thereof, a conviction of assault and battery on one of them is a bar to a prosecution for assault and battery upon the other,": 20 A. L. R. 348.

On the other hand, if a man fires two shots, one immediately following the other and kills or wounds two different persons, each with a different shot, there are two offenses, although they were committed by the same person at practically the same time and at the same place by reason of malice and vengeance involving both persons: 20 A. L. R. 348. As stated in Commonwealth ex rel. v. Veley, 63 Pa. Superior Ct. 489, 496:

"Where there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth."

It may well be that, if an indictment in one count charges a defendant with having set up at the same time and at the same place several gambling machines, it will not be held bad for duplicity, for the motion to quash, being equivalent to a demurrer, admits the facts stated in the indictment and the pleader is bound by them but that does not mean that a person who sets

up several gambling machines on the same day in the same building commits only one offense. The setting up of a gambling machine must necessarily be a separate act and such an act is clearly a complete offense. In Commonwealth v. Reichbaum, 3 Erie 224, 225, Judge Hirt said: "The setting up of a gambling device at one place is a complete offense." See Gilmore v. State (Texas), 29 S. W. 477 and 27 C. J. 1012, note 93, citing Fields v. Territory, 1 Wyoming 78. In the opinion of this court it is impossible to set up more than one gambling machine at the same time and place.

Defendant in support of his contention cites State Board of Medical Examiners of New Jersey v. Jones, 133 Atl. 519, and State v. Chamberlain, 132 Wash. 520, 232 Pac. 337, in which it was held that the illegal practice of medicine and law is a continuing offense and a general allegation of practicing medicine or law which sets forth numerous acts of practice is the allegation of one offense and a conviction thereunder bars a subsequent prosecution for acts occurring during the period covered by the indictment. Friedeborn v. Commonwealth, 113 Pa. 242, holds the same in respect to the Act of April 22, 1794, 3 Sm. L. 177, commonly called the "Sunday Act", which makes the carrying on of a worldly employment or business on the Sabbath Day an offense (See 18 PS §4699.4). These cases would be applicable to the instant case if defendant were charged with operating or maintaining a place for gambling. A gambling place might be equipped with many devices for gambling and yet all of them would merely contribute to the operation of the gambling place and there would be only one violation, but such is not the present case. The acts of setting up, exhibiting, or opening a number of gambling devices or games of chance do not constitute a continuing offense but each act of setting up or exhibiting is a separate offense: Gilmore v. State

(Texas), 29 S. W. 477; State v. Hoffman et al., 56, Wash. 622, 106 Pac. 139-140.

In the present case we have nine separate indictments, each one charging defendant with setting up or causing to be set up on March 4, 1950, in Washington Township, Franklin County, a gambling device— a slot machine. Each indictment refers to a different slot machine and gives a description and the serial number of the machine referred to therein. The fact that each indictment sets forth the date of the commission of the offense charged in it as March 4, 1950, does not indicate that all of the offenses were done by one act or at the same time or as part of the same transaction. Neither does the fact that each charge the offense, set forth therein, was committed in Washington Township, Franklin County, indicate that all the offenses were committed at the same place. Where a single act constitutes a crime, a number of such acts done on the same day in the same locality constitute as many separate crimes as acts. For instance, a person who enters, with the intent to commit a felony, the same building at three different times on the same day, clearly commits the crime of burglary three times. The indictments in the present case do not charge that the offenses set forth in them were done by defendant at the same time and at the same place. An indictment must be judged by what it shows on its face. There was no reason for the court to consider the nine indictments as charging only one offense.

In the trial of the case it developed that four of the machines were set up in a large room on the main floor of the Eagles' Aerie Home in August 1948, in Washington Township, Franklin County, Pa.; that three additional machines were brought in at a later time, that at a still later time three machines which were set up on the main floor were moved down to the

stag bar on the floor below and three new machines were placed on the upper floor and that, during the period of time mentioned, often if a machine would break down it would be junked and a new machine put in its place. Defendant stated he had furnished 15 or 16 new machines during the period. The evidence did not show the dates on which each of the nine machines described in the nine separate indictments and which were found on the premises on March 4, 1950, were set up. However, the whole period during which the machines were shown to have been set up was subsequent to the effective date of the statute under which the prosecutions were brought, prior to the day on which the indictments were found and within the period fixed by the statute of limitations for the finding of indictments for such offenses. This was all that was necessary: Commonwealth v. Nailor (No. 1) 29 Pa. Superior Ct. 271, 272-273.

Defendant was properly indicted for nine separate offenses and the evidence was sufficient for the jury to find that he was guilty of each one of the offenses. The jury found him guilty of each one of the offenses and we do not feel that the court erred in not ordering the Commonwealth to elect to try him on only one of the indictments or in not holding that all of the indictments constituted one offense and he could only be convicted of one offense.

Now, March 27, 1951, defendant's motions for arrest of judgment and a new trial in April sessions, 1950, no. 41, are overruled.

Same decree in April sessions, 1950, nos. 42, 43, 44, 45, 46, 47, 48 and 49.

Defendant is ordered to appear before this court to be sentenced in each of the foregoing cases on March 30, 1951, at 9:30 a.m.